SULTZMAN, Respondent, v. BRANHAM et al., Appellants.

**St. Louis Court of Appeals, January 21, 1908.**

1. **EASEMENT: Obstruction: Injunction.** A party, to whom a passage way was granted by a lease giving him access to his property, could restrain by injunction the obstruction of such passageway.

2. ————: ————: ————: **Waiver of Right to Obstruct.** And where the lease in such case provided that the grantor of the easement should maintain for the benefit of the grantee a building on the premises, even if such building should obstruct the passageway at another point this would not prevent the grantee of the easement from maintaining an injunction to prevent the obstruction because he would waive his right to require such building maintained.

Appeal from Hannibal Court of Common Pleas.—*Hon. David H. Eby,* Judge.

AFFIRMED.

*Charles E. Rendlen* for appellants.

*Thomas H. Bacon* for respondent.

GOODE, J.—This is a suit in equity to enjoin the obstruction of a private way over which the plaintiff claims easement of egress and ingress. Plaintiff and the defendant Branham own and occupy in person and by tenants, contiguous properties in the city of Hannibal, Missouri. Plaintiff holds her property under and by virtue of deeds executed to her grantors by Branham, who was the common source of title. The passageway in dispute was created by a lease executed by Branham to John B. Shepherd, June 12, 1876. The lease was subsequently assigned to the plaintiff. It is necessary to copy it as both plaintiff's cause of action and the defenses of the defendants are founded upon it.

"This lease made and entered into this 12th day of June, 1876, by and between Thomas H. Branham and Columbia E. Branham, his wife, parties of the first part, of the city of Hannibal, Marion county, Missouri, and John B. Shepherd, of the county of Marion and the State of Missouri, party of the second part, Witnesseth: That said parties of the first part for and in consideration of the sum of ten (10) dollars to them paid by the party of the second part, the receipt of which is hereby acknowledged, and the further consideration hereinafter named have this day leased unto the said party of the second part for the period or term of ninety-nine years (99) from this date the right of way over the following described part of lot number seven (7) in block number twelve (12) in the city of Hannibal, county of Marion and State of Missouri, to-wit:    Begin on the south line of said lot number seven (7), forty-one and eleven-twelfths (41-11-12) feet east from the southwest corner of said lot number seven (7), thence north parallel with the east line of Third street fifty-five (55) feet and six (6) inches to the south line of an alley; thence west with the south line of said alley three feet; thence south parallel with the east line of Third street fifty-

five (55) feet and six (6) inches to the south line of said lot, number seven (7); thence east on the south line of said lot three (3) feet to the beginning. The said parties of the first part also hereby agree to maintain a cistern and privy or (water closet) on said premises, and they hereby agree to lease to the said party of the second part and assigns for the period or term of ninety-nine years from the date hereof, the use of said privy and the use of the water in said cistern for and during the period of ninety-nine (99) years and as a further consideration the party of the second part hereby binds himself to pay one-fourth of all necessary repairs the said cistern and privy may require during the period of ninety-nine (99) years. In testimony whereof, the said parties have hereto set their hands and seals the day and year first above written.

"(Signed)    THOMAS H. BRANHAM (Seal).
"(Signed)    COLUMBIA E. BRANHAM (Seal).
"(Signed)    JNO. B. SHEPHERD (Seal).

Third street in the city of Hannibal runs north and south and Broadway east and west. Branham's property faces west on Third street and appears to be divided into three lots, all improved, of which the south one is occupied by defendant Masterson as Branham's tenant. Masterson conducts a saloon in the building. Branham is personally in possession of the two lots north of the one occupied by his tenant Masterson. Immediately north of Branham's lot and running east and west, so as to intersect Third street, is a private alley ten feet wide, which connects on the east with a public alley, running north and south, sixteen feet wide. Running parallel to said private alley and south of both Branham's and the Sultzman's property is Broadway, which intersects Third street at right angles. Mrs. Sultzman's property consists of two lots, both improved, which front south on Broadway. One of them is occupied by

a·tenant of Mrs. Sultzman for a drugstore, and in the other she conducts a bakery, that is to say; the first floors of the two buildings are used for those businesses, but the second floors of both buildings are occupied by Mrs. Sultzman and her family. The Sultzman lot extends north from Broadway and abuts at the rear of Branham's south lot, which is the one occupied by the Masterson saloon. The other Sultzman lot extends through from Broadway to the private alley ten feet wide on the north. The private way which is in controversy in the present suit and alleged to be obstructed by the defendants is a passageway three feet wide, extending from the rear of the west Sultzman lot northwardly behind the three Branham lots and between them and that portion of the rear half of the east Sultzman lot. The situation of the properties and the passageway can only be understood by reference to the plat of which we subjoin a copy.

Third Street

Scale 1-32 of 1 inch to foot.

As we understand, Mrs. Sultzman acquired title to the rear half of her east lot from a Mrs. Picken, who held by deed from Branham. At the northwest corner of what was the Picken's lot, that is to say, where said lot intersected the ten foot wide private alley and the passageway in dispute, an old privy had stood some twenty years or more before the occurrence of the incident in controversy. There is a dispute between the parties and a conflict in the evidence as to whether said privy vault projected into the passageway or not. Branham's testimony is that it stood directly in the passageway; whereas the testimony for the plaintiff is that it did not project into the passageway more than an inch or two. It had been abandoned many years ago, but its walls could still be discerned at the time of the trial. During the year 1905, Branham and Masterson erected a wooden shed about ten feet high, three feet wide and six feet long, immediately in the rear of Masterson's saloon. This structure projected into the passageway in controversy so as to leave a space between it and the Sultzman lot on the east, only twenty inches wide; that is to say, it took up some sixteen inches of the passageway. The shed was built for the purpose of putting a sanitary closet in it and connecting it with the city sewers. Plaintiff protested against the work while it was in progress and sued out a temporary injunction, which, on final hearing, was made permanent during the continuance of the aforesaid lease. The defendants were enjoined and restrained from placing or maintaining said obstruction on said passageway. From this judgment defendants appealed.

The court found the facts substantially as we have stated them and further, that the three-foot strip forms the only rear access to plaintiff's Broadway properties; that said strip had been used and enjoyed for that purpose ever since the acquisition of it until the erection of the obstruction by defendants. Further, that the ti-

tle to plaintiff's Broadway lots was originally conveyed
by Branham to John B. Shepherd, and the lease of said
three foot strip executed by said Branham to Shepherd
simultaneously with the conveyance of the title to the
lots, and as part of the same transaction. The court
further found that not only had the passageway been
obstructed by the proposed water closet, but that the
erection of said closet would increase plaintiff's fire risk
and tend to vitiate her insurance policies; that the ob-
struction practically destroyed access to plaintiff's real
estate from the rear and subjected herself and tenants
to great inconvenience, and, in addition, injured her
other property; that the purpose of defendants was to
construct a permanent obstruction in said passageway,
and as a result great and irreparable damage would flow
from its construction; that said closet constituted a
nuisance to plaintiff, which would only be stopped by
its abatement. It is manifest that the obstruction of
the passageway by the proposed water closet was in dero-
gation of plaintiff's easement and rights under her lease,
unless the obstruction was authorized by the lease it-
self; that is, was parcel of the easement granted by the
lease. Where a private alley or passage is left open for
the use of adjacent proprietors by agreement between
them, an obstruction of the passageway will be prevent-
ed by injunction. [St. Louis Safe Dep. & Sav. Co. v.
Kennett Estate, 101 Mo. App. 370, 74 S. W. 474.] This
proposition is not denied by defendant's counsel, whose
contention is that the lease from Branham to Shepherd
under which plaintiff claims the passage, expressly re-
quired Branham to maintain a cistern and water closet
in the passage for the use of the lessee and his assigns
during the term of the lease (ninety-nine years), in
consideration of the lessee and his assignees paying
one-fourth of the expense of the repairs to the cistern
and water closet. Hence the argument for the defend-
ant is that the construction of the water closet in the

rear of Masterson's saloon and encroaching on the passage was pursuant to the terms of the lease and not a breach of them.   The lease bound Branham to maintain a privy "on said premises," and literally read, that clause would mean that they should maintain a privy in the confines of the passageway.   But plainly such was not the intenton of the contract.   It is in proof and not disputed, that the purpose of Shepherd, the first grantee, was to procure a rear outlet from his lots on Broadway to the private alley ten feet wide, running parallel to Broadway on the north, and for this purpose he took a lease on the three foot strip at the same time he acquired title to the Broadway lots by deed.   It would be irrational to say the parties intended that the narrow passage thus provided, should be closed by the construction of a water closet in its limits.   At that time the privy stood northwest of the Picken's lot, and although there is a dispute in the evidence as to whether the privy was in the passageway, we are convinced it was outside.   It seems to have been quite a large vault and it is incredible that Shepherd, who had in view a rear entrance to his Broadway lots, would have taken a lease on a strip of ground closed by the privy, for a passageway.   It is our belief that Shepherd and Branham contracted with reference to the old privy then standing, on what came to be known as the Picken's lot.   This privy had been abandoned years before the defendants started to erect the one in the rear of the Masterson lot, and defendants cannot claim with any sincerity that they are putting in this water closet to carry out the terms of the lease and for the use of Mrs. Sultzman.   The lease in providing for the privy, did so for the benefit of Branham or his tenants, who might be in possession of the property fronting on Third street. Mrs. Sultzman as assignee and present beneficiary, could waive her right to performance of Branham's covenant to maintain a privy in the passage, if she chose.   Hence,

if we grant, for argument's sake, that Branham bound himself to erect and maintain a privy in the passage for the benefit of the lessee and his assigns, he need not erect one when the lessee does not want it. The water closet in question is being erected for Masterson's use over the protest of plaintiff, according to the finding of the court below, practically depriving her of access to her property from the rear and creating a nuisance. Its construction and maintenance should be prevented. The judgment is affirmed. All concur.